﻿Citation Nr: AXXXXXXXX
Decision Date: 02/27/20 Archive Date: 02/27/20

DOCKET NO. 190622-12045
DATE: February 27, 2020

ORDER

Entitlement to an initial rating in excess 10 percent for chronic sinusitis is denied.

Entitlement to a compensable rating for pseudofolliculitis barbae (PFB) is denied.

Entitlement to a compensable rating for hemorrhoids is denied.

Entitlement to a compensable rating for right long finger fracture is denied.

Entitlement to service connection for right wrist condition is denied.

Entitlement to service connection for right elbow condition is denied.

Entitlement to service connection for left elbow condition is denied.

Entitlement to service connection for hearing loss is denied.

Entitlement to service connection for fifth finger right hand pain is denied.

REMANDED

Entitlement to service connection for left wrist condition is remanded.

FINDINGS OF FACT

1. The Veteran’s chronic sinusitis most nearly approximated three to six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge. 

2. The Veteran’s PFB is manifested by several papules that cover a total body area of less than five percent.

3. Throughout the period on appeal, the Veteran’s hemorrhoids were mild to moderate with symptoms of occasional blood in stool, pain, and discomfort. 

4. The Veteran’s fracture of the right long finger has not resulted in gap between the left index fingertip and the proximal transverse crease of the palm of one inch or more, extension limited by more than 30 degrees, or painful motion.

5. The preponderance of the evidence of record is against finding a current diagnosis of right wrist condition at any time during or approximate to the pendency of the claim. 

6. The preponderance of the evidence of record is against finding a current diagnosis of right elbow condition at any time during or approximate to the pendency of the claim. 

7. The preponderance of the evidence of record is against finding a current diagnosis of left elbow condition at any time during or approximate to the pendency of the claim. 

8. The preponderance of the evidence of record is against finding a current diagnosis of 5th finger right hand pain at any time during or approximate to the pendency of the claim. 

9. The Veteran does not have a current diagnosis of bilateral hearing loss per VA standards.

CONCLUSIONS OF LAW

1. The criteria for entitlement to a rating in excess of 10 percent for chronic sinusitis have not been met. 38 U.S.C. §§ 1155 , 5107(b), 5108, 7105 (2012); 38 C.F.R. §§ 3.102 , 3.303, 3.304, 3.310, 4.1, 4.3, 4.7, 4.10, 4.14, 4.97, Diagnostic Codes (DC) 6513.

2. The criteria for a compensable disability rating for PFB have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.118, DC 7806.

3. The criteria for a compensable disability rating for hemorrhoids have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.114, DC 7336. 

4. The criteria for a compensable rating for fracture of the right long finger have not been met. 38 U.S.C. §§ 1155 , 5107(b); 38 C.F.R. §§ 3.102 , 3.159, 4.40, 4.45, 4.59, 4.71a, DC 5229.

5. The criteria for service connection for right wrist condition are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

6. The criteria for service connection for right elbow condition are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

7. The criteria for service connection for left elbow condition are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

8. The criteria for service connection for fifth finger right hand pain is not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

9. The criteria for service connection for bilateral hearing loss are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.385.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Marine Corps from December 1992 to October 1996.

In June 2019, the Veteran filed a decision review request and elected direct review. 38 C.F.R. § 19.2(d). Based on the Veteran's choice to pursue a direct review of his appeal, the Board will decide the appeal “based on the evidence of record at the time of the prior decision.” The Board notes that the rating decision on appeal was issued in May 2019.

Increased Ratings

Disability evaluations are determined by the application of the facts presented to VA’s Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

Where the question for consideration is the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection and consideration of the appropriateness of a “staged” rating is required. See Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). VA adjudicators must consider whether to assign different ratings at different times during the rating period to compensate the Veteran for times when the disability may have been more severe than at others. The Court since has extended this practice even to established ratings, not just initial ratings. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

1. Entitlement to an initial rating in excess 10 percent for chronic sinusitis

The Veteran is currently rated as 10 percent disabled under DC 6513 for his chronic sinusitis, effective July 9, 2018. He contends that his symptoms more nearly approximate a rating of 60 percent.

Under DC 6513, a 10 percent rating is warranted for one or two incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or three to six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. A 30 percent rating is warranted for three or more incapacitating episodes per year requiring prolonged (lasting four to six weeks) antibiotic treatment, or more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. A 50 percent (maximum) rating is warranted following radical surgery with chronic osteomyelitis, or near constant sinusitis characterized by headaches, pain and tenderness of the affected sinus, and purulent discharge or crusting after repeated surgeries. 38 C.F.R. § 4.97 , DC 6513. An incapacitating episode of sinusitis means one that requires bed rest and treatment by a physician. Id., Note 1.

The Veteran attended a VA examination for chronic sinusitis in October 2018. The examiner reported that the Veteran has episodes of sinusitis with headaches and pain of the affected sinus. In the past 12 months, he had three non-incapacitating episodes involving headaches, pain and purulent discharge or crusting and no incapacitating episodes or sinus surgeries. The examiner concluded that functionally, the symptoms interfere with the Veteran's efficiency at work as he will miss work about two times every other month. 

Review of the medical records reveal that the Veteran reported a few weeks of nasal congestion in January 2018. Again, in February, the Veteran reported blockage and congestion in the left nostril. In May 2018, the Veteran had upper respiratory symptoms to include sinus blockage and congestion. The record does not reveal further complaints until March 2019, when the records note chronic sinus congestion. Throughout this time, the Veteran underwent treatments consisting of antibiotics, Claritin, Benadryl and Flonase. 

In order to warrant the next higher rating, the evidence must show three or more incapacitating episodes or more than six non-incapacitating episodes. The medical evidence indicates that the Veteran had four sinus related episodes between January 2018 and March 2019, which required treatment with antibiotics. While the Veteran treated his sinusitis with antibiotics, the record does not indicate that the treatment also included bed rest. As such, neither the medical records or VA examination establish incapacitating episodes of sinusitis during the period at issue. 

As the medical evidence of record does not establish three or more incapacitating or at least six non-incapacitating episodes per year, entitlement to a rating in excess of 10 percent is not warranted.

2. Entitlement to a compensable rating for pseudofolliculitis barbae 

The Veteran has a noncompensable rating under DC 7806 for his PFB, effective July 9, 2018. He contends that his symptoms warrant a compensable rating.

VA amended the criteria for rating skin disabilities effective from August 13, 2018. These new regulations apply to all applications for benefits received by VA or that are pending before the agency of original jurisdiction on or after August 13, 2018. Claims pending prior to the effective date will be considered under both old and new rating criteria, and whatever criteria is more favorable to the veteran will be applied. The Board may not apply a current regulation prior to its effective date, unless the regulation explicitly provides otherwise. Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003). However, the Board is not precluded from applying prior versions of the applicable regulation to the period on or after the effective dates of the new regulation if the prior version was in effect during the pendency of the appeal. 

Prior to August 13, 2018, under Diagnostic Code 7806, a noncompensable rating is assigned when PFB affects less than 5 percent of the entire body or less than 5 percent of exposed areas affected, and; no more than topical therapy required during the past 12 months. A 10 percent rating is assigned for at least 5 percent, but less than 20 percent, of the entire body, or; at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period. A 30 percent rating is assigned for 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly during the past 12-month period. A 60 percent rating is assigned for more than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near- constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12- month period. Or rate as disfigurement of the head, face, or neck (DC 7800) or scars (DC’s 7801, 7802, 7803, 7804, or 7805), depending on the predominant disability. 38 C.F.R. § 4.118, Diagnostic Code 7806. 

For claims filed prior to August 13, 2018, the Court held that a systematic therapy is one that that affects the entire body in its treatment of the condition at issue, and that the Board must determine (1) whether a topical treatment affects the body as a whole in treating a veteran’s skin condition; and (2) whether the given treatment is “like” a corticosteroid or other immunosuppressive drug.” Burton v. Wilkie, 30 Vet. App. 286 (2018). Only the second question need be addressed if the treatment is clearly systemic. Id. 

Effective August 31, 2018, VA regulations explicitly state that systemic therapy is treatment that is administered through any route other than the skin, and topical therapy is treatment that is administered through the skin. 38 C.F.R. § 4.118(a). 

Additionally, effective August 13, 2018, a new General Rating Formula for the Skin applies to Diagnostic Codes 7806, 7809, 7813 to 7816, 7820 to 7822, and 7824. See 38 C.F.R. § 4.118. Under this formula, a noncompensable rating is assigned for no more than topical therapy required over the past 12-month period and at least one of the following: characteristic lesions involving less than 5 percent of the entire body affected; or characteristic lesions involving less than 5 percent of exposed areas affected. A 10 percent rating is assigned for at least one of the following: characteristic lesions involving at least 5 percent, but less than 20 percent, of the entire body affected; or at least 5 percent, but less than 20 percent, of exposed areas affected; or intermittent systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of less than 6 weeks over the past 12- month period. A 30 percent rating is assigned at least one of the following: characteristic lesions involving more than 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected; or systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of 6 weeks or more, but not constantly, over the past 12-month period. A 60 percent rating is assigned for at least one of the following: characteristic lesions involving more than 40 percent of the entire body or more than 40 percent of exposed areas affected; or constant or near-constant systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, psoralen with long-wave ultraviolet-A light (PUVA), or other immunosuppressive drugs required over the past 12-month period. Or rate as disfigurement of the head, face, or neck (DC 7800) or scars (DC’s 7801, 7802, 7803, 7804, or 7805), depending on the predominant disability. 38 C.F.R. § 4.118, General Rating for the Skin for DCs 7806, 7809, 7813-7816, 7820-7822, and 7824. 

The Veteran underwent a VA examination in October 2018. The examiner reported no medications, treatments or procedures within the past 12 months. Physical examination revealed several papules over the anterior aspect of the neck distal to the Veteran's beard with no scarring or disfigurement of the head, face or neck. The Veteran’s total body area and exposed area affected by PFB was less than five percent. The examiner concluded that the Veteran’s PFB does not result in functional impairment. Review of the medical records does not reveal any complaints of or treatments for PFB. 

The Board finds that the preponderance of the evidence is against the assignment of a compensable evaluation under the pre-August 13, 2018, regulations because the Veteran’s PFB symptoms do not more nearly approximate at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period. 

Additionally, the Board finds that the preponderance of the evidence is also against the assignment of a compensable evaluation under the August 13, 2018, regulations because the Veteran’s PFB symptoms do not more nearly approximate characteristic lesions involving at least 5 percent, but less than 20 percent, of the entire body affected; or at least 5 percent, but less than 20 percent, of exposed areas affected; or intermittent systemic therapy required for a total duration of less than 6 weeks over the past 12- month period. 

The Board acknowledges that the Veteran believes that the disability on appeal is more severe than the assigned disability rating reflects. However, the evidence of record does not establish that the Veteran’s disability more nearly approximates the criteria in the next higher rating. 

The Board has considered whether any other Diagnostic Codes related to disabilities of the skin would provide for a higher disability evaluation. However, the evidence does not reflect that he would warrant a higher rating under a different diagnostic code. See 38 C.F.R. § 4.118. 

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran’s claim for a compensable rating for PFB. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

3. Entitlement to a compensable rating for hemorrhoids

The Veteran has a noncompensable rating under DC 7336 for his hemorrhoids, effective July 9, 2018. He contends that his symptoms warrant a compensable rating.

The Veteran’s hemorrhoids are rated under DC 7336, under which mild or moderate external or internal hemorrhoids warrant a noncompensable rating. Large or thrombotic, irreducible hemorrhoids with excessive redundant tissue, evidencing frequent recurrences warrant a 10 percent rating; and hemorrhoids with persistent bleeding and with secondary anemia, or with fissures warrant a rating of 20 percent. 

The Veteran attended a VA examination in October 2018. He reported intermittent symptoms such as occasional blood in stool, pain, and discomfort when using the bathroom. The Veteran stated that he uses over the counter hemorrhoidal cream. Physical examination revealed small to moderate external hemorrhoids and laboratory testing from October 2018 found no anemia. The examiner noted that functionally, the hemorrhoids result in discomfort while sitting; thus, the Veteran takes more breaks at work. 

Review of the medical treatment records reveal a statement from Dr. P.Y., who reported that the Veteran has internal and external hemorrhoids that are treated with medication, dietary restrictions and SITZ baths. 

In order to warrant a compensable rating, the evidence must show hemorrhoids that are large or thrombotic, irreducible, with excessive redundant tissue, with anal fissure, or with persistent bleeding with secondary anemia during the period on appeal. The VA examiner observed mild to moderate external hemorrhoids and laboratory testing concluded that the Veteran does not have anemia. 

The Board finds the Veteran’s symptoms of occasional blood in stool, pain, and discomfort when using the bathroom most closely approximate the criteria contemplated by a noncompensable rating for mild to moderate hemorrhoids. Therefore, entitlement to a compensable rating for hemorrhoids is denied.

4. Entitlement to a compensable rating for right long finger fracture 

The Veteran has a noncompensable rating under DC 5229 for fracture of right long finger, effective July 9, 2018. He contends that his symptoms more nearly approximate a rating of 10 percent.

DC 5229 pertains to limitation of motion of the index finger or of the long finger. An evaluation of 10 percent under DC 5229 requires limitation of motion of the index finger or of the long finger, with a gap of one inch (2.5 centimeters) or more between the fingertip and the proximal transverse crease of the palm of the hand, with the finger flexed to the extent possible, or with extension limited by more than 30 degrees. 38 C.F.R. § 4.71a.

In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40, and 4.45 should be considered. See DeLuca v. Brown, 8 Vet. App. 202 (1995). The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. In Burton v. Shinseki, 25 Vet. App. 1, 5 (2011), the Court found that, when 38 C.F.R. § 4.59 is raised by the claimant or reasonably raised by the record, even in non-arthritis contexts, the Board should address its applicability.

The Veteran attended a VA examination in October 2018. The range of motion testing revealed long finger maximum extension to zero degrees with no gap between the finger and proximal transverse crease of the hand on maximal finger. There was no evidence of pain on examination, no evidence of tenderness, and no additional functional loss with repetitive use testing. The examiner concluded that pain, weakness, fatigability and/or incoordination does not significantly limit functional ability. The Veteran had normal hand grip strength, no muscle atrophy and no ankylosis. The examiner noted the Veteran does have a scar that is neither painful nor unstable. Imaging studies revealed normal findings and there is no pain with passive range of motion or when the joint is used in non-weight bearing. The examiner concluded that the Veteran’s long right finger fracture does not result in functional impairment. 

The record contains medical treatment records; however, they do not have detailed measurements of the Veteran's range of motion of the long finger or any treatments or complaints related to the right long finger. 

The evidence does not establish that the symptomology associated with the service connected long finger results in a gap between the left index fingertip and the proximal transverse crease of the palm of one inch or more, extension limited by more than 30 degrees, or painful motion. As such, the evidence most closely approximates the criteria contemplated by a non-compensable rating. 

The Board has considered whether any other Diagnostic Codes related to the long finger would provide for a higher disability evaluation. However, the evidence does not reflect that the Veteran would warrant a higher rating under DC 5225 as neither favorable or unfavorable ankylosis is shown. See 38 C.F.R. § 4.71a. 

As such, the claim for a compensable rating for fracture of the right long finger must be denied.

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. § 1110, 1131; 38 C.F.R. § 3.303. “To establish a right to compensation for a present disability, a veteran must show: ‘(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service’ – the so-called “nexus” requirement.” Holton v. Shineski, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

5. Entitlement to service connection for right wrist condition and bilateral elbow condition 

The Board concludes that the Veteran does not have a current diagnosis of right wrist condition or right or left elbow condition and has not had one at any time during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d). 

Review of the VA medical treatment records confirms that the evidence of record does not contain a diagnosis of or treatment for either a right wrist or elbow condition. The Board notes that Dr. P.Y. reported diagnoses of tendonitis of the right wrist, left elbow and right elbow; however, these findings are inconsistent with the post-service medical records. Notably, the post-service treatment records reflect that throughout 2017 the Veteran attended several orthopedic appointments for his complaints of left wrist pain. However, the record is void of any complaints about his right wrist or either elbow. In October 2018, approximately three months after the evaluation by Dr. P.Y., the Veteran’s VA examination for the hand revealed normal grip and no muscle atrophy of the right hand. 

The Board assigns more probative weight to the contemporaneous record than to the findings from Dr. P.Y. The statement from Dr. P.Y. as stated above, is inconsistent with medical records which contain no complaints, treatments or diagnoses for the right wrist, left elbow or right elbow. There is no indication that the relevant medical evidence of record was reviewed in conjunction with this examination, specifically service treatment and post-service medical records. Dr. P.Y. cites to in-service diagnoses of tendonitis of the wrist and elbows; however, review of the service treatment records does not reveal any such diagnoses; thus, further calling into question the reliability of his findings. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that a medical opinion based on an inaccurate factual premise has no probative value). Furthermore, Dr. P.Y. does not indicate what testing, if any, was conducted to determine the diagnoses, such range of motion testing, imaging or other relevant testing. Finally, Dr. P.Y. does not provide rationales to support his conclusions. A medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two. See Nieves- Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). For these reasons, no weight is given to the findings and conclusion of Dr. P.Y. 

Recently in Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018), the Federal Circuit held that “pain alone, without an accompanying diagnosis of a present disease, can qualify as a disability” if it “reaches the level of a functional impairment of earning capacity.” Id. at 1367-69. The Board finds that the evidence does not establish pain or the requisite level of functional impairment for either the right wrist, left elbow or right elbow.

To the extent that the Veteran alleges he has a right wrist or elbow condition this allegation is without probative value as this requires specialized knowledge as well as pertinent testing to diagnose. As a lay person, the Veteran does not have the requisite knowledge to provide the diagnoses. 

Therefore, the Board finds the evidence insufficient to establish a current disability. Congress has specifically limited entitlement to service connection to cases where such incidents have resulted in a disability. Brammer v. Derwinski, 3 Vet. App. 223, 255 (1992). In the absence of proof of a present disability there can be no valid claim. Id. 

Additionally, the Board notes that the VA’s duty to provide a VA examination is not triggered in this case. In determining whether VA’s duty to assist requires a VA medical examination or medical opinion, four factors are for consideration: (1) whether there is competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) whether there is evidence establishing that an event, injury, or disease occurred in service, or evidence establishing certain diseases manifesting during an applicable presumption period; (3) whether there is an indication that the disability or symptoms may be associated with the veteran's service or with another service-connected disability; and (4) whether there otherwise is sufficient competent medical evidence of record to make a decision on the claim. 38 U.S.C. § 5103A (d) (2012); 38 C.F.R. § 3.159 (c)(4) (2017); see McLendon v. Nicholson, 20 Vet. App. 79 (2006). The evidence of record does not establish that the Veteran has a current disability. As such, a VA examination or opinion is not necessary. 

Therefore, the preponderance of the evidence is against the claim for service connection for right wrist condition, right elbow condition and left elbow condition. 

6. Entitlement to service connection for fifth finger right hand pain 

The Board concludes that the Veteran does not have a current diagnosis of fifth finger right hand pain and has not had one at any time during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d).

As previously discussed, in October 2018 a VA examination for the hand was conducted. The Veteran reported functional impairment due to right hand soreness that impedes his driving and causes difficulty with opening jars; however, he also reported that he is not complaining of fifth finger right hand pain. Range of motion testing for the fifth finger revealed maximum extension to zero and MCP to 90 degrees, PIP to 100 degrees and DIP to 70 degrees with no evidence of pain with motion or pain with use of the hand. The Veteran had normal hand grip strength and no muscle atrophy. An October 2018 imaging result revealed unremarkable views of the right hand. The examiner concluded that there is no diagnosis related to fifth finger right hand pain. Review of the medical treatment records confirms that the evidence of record does not contain a treatment for or a diagnosis of fifth finger right hand pain. 

Dr. P.Y. provided an opinion that the Veteran has tendon damage and tissue loss due to an in-service brown recluse spider bite. Again, Dr. P.Y.’s opinion is inconsistent with the post-service medical records, VA examination and Veteran’s statements, which reveal no complaints, treatments or diagnoses pertaining to fifth finger right hand pain during the appeal period. As such, the Board gives greater weight to the findings of the VA examiner, the Veteran’s self-report of no fifth finger pain and the objective medical evidence of record.

The Board has also considered Saunders in this case and finds that the evidence does not establish pain and/or the requisite level of functional impairment. Saunders, 886 F.3d 1356.

The evidence is insufficient to establish a current disability, as the medical evidence reveals normal imaging results, the VA examiner found no diagnosis and the Veteran denied having any fifth finger right hand pain at the VA examination. Congress has specifically limited entitlement to service connection to cases where such incidents have resulted in a disability. Brammer v. Derwinski, 3 Vet. App. 223, 255 (1992). In the absence of proof of a present disability there can be no valid claim. Id. 

As such, the preponderance of the evidence is against the claim for service connection for fifth finger right hand pain. 

7. Entitlement to service connection for hearing loss 

Impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or, when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000. Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The Veteran attended a VA examination in October 2018. The Veteran underwent audiometric testing, which revealed essentially normal hearing. His puretone thresholds, in decibels, were as follows:

 HERTZ

 500 1000 2000 3000 4000

RIGHT 5 5 15 25 15

LEFT 10 10 15 15 20

The Veteran’s speech discrimination testing revealed result of 96 percent bilaterally. The VA examiner determined that the Veteran has normal hearing in both ears. 

The medical records reveal an audiology consultation from November 2015, prior to his claim. The audiometric testing revealed essentially normal hearing. His puretone thresholds, in decibels, were as follows:

 HERTZ

 500 1000 2000 3000 4000

RIGHT 5 5 10 30 15

LEFT 5 5 10 20 20

The examiner noted mild sensorineural hearing loss at 3000 Hertz in right ear with all other thresholds within normal limits bilaterally.

The Veteran also provided a statement from Dr. P.Y., who reported bilateral hearing loss of 40 percent based on spoken and whispered words along with 256 cps, 512 cps stimuli at a distance of five feet. The Board does not give any weight to the findings and opinion of Dr. P.Y. for the previously discussed reasons in addition to the following reasons. First, Dr. P.Y. is a chiropractic physician, not a state licensed audiologist. As a result, the examination does not comply with the requirements of 38 C.F.R. § 4.85. Second, a showing of current disability requires meeting specific puretone thresholds in 500, 1000, 2000, 3000, and/or 4000 Hertz, or meeting a certain score on the Maryland CNC speech recognition test. Dr. P.Y. did not provide puretone threshold results or utilize the Maryland CNC controlled speech discrimination scores as required by 38 C.F.R. § 3.385. As such, the Board finds this audiological evaluation is insufficient for VA compensation purposes. 

The Board gives probative weight to the findings VA examiner and November 2015 examiner, who are both qualified audiologists and performed the requisite testing. The relevant evidence of record does not establish the presence of bilateral hearing loss at the level required to be considered disabling for VA purposes at any time since the claim was received. Therefore, a current diagnosis of bilateral hearing loss for VA purposes is not shown and the claim for service connection must be denied. 

REASONS FOR REMAND

1. Entitlement to service connection for left wrist condition 

The issue of entitlement to service connection for left wrist condition is remanded to correct a duty to assist error that occurred prior to the May 2019 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) did not obtain a VA examination prior to the May 2019 rating decision on appeal. 38 C.F.R. § 3.159(c)(4)(i) (2017). 

The record contains sufficient evidence to trigger the VA’s duty to assist by providing a VA examination. The AOJ concluded that the Veteran has a current diagnosis of a left wrist condition. Review of the service treatment records reveal that the Veteran fell down the stairs and landed on his left hand, which resulted in swelling, numbness and a reduced grip. However, a VA examination to discuss the nature and etiology of the Veteran’s left wrist condition has not been provided. 

Therefore, a VA examination for an opinion to determine the etiology of the Veteran’s left wrist condition is warranted. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

The matters are REMANDED for the following action:

1. Schedule the Veteran for a VA examination with a medical professional with appropriate expertise to determine the nature and etiology of his left wrist condition. The examiner should review the Veteran’s claims file.

Based on a review of the record, the examiner must address the following:

Whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran’s left wrist condition is related to active service, or is caused by or aggravated by military service.

The term “at least as likely as not” does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a certain conclusion is so evenly divided that it is as medically sound to find in favor of such a conclusion as it is to find against it. 

In all opinions rendered, the examiner is advised that the Veteran is competent to report his symptoms. The examiner should elicit a complete medical history from the Veteran and the opinion and rationale should reflect such consideration. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

If the medical professional cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation for why an opinion cannot be rendered. In so doing, the medical professional shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information, or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s).

 

 

G. A. WASIK

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. A. Prinsen

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.